UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-mc-21016-GOODMAN

INTER-AMERICAN DEVELOPMENT
BANK,

    Plaintiff,

v.

VENTI S.A., et al.

    Defendants.
_____/

LUCAS ENRIQUE PESCARMONA,

    Petitioner.
_____/

## ORDER DENYING PLAINTIFF'S MOTION TO TRANSFER

Inter-American Development Bank ("IDB" or "Plaintiff") filed a Motion to Transfer Lucas Enrique Pescarmona ("Pescarmona")'s third-party Petition to Quash Subpoena to Pescarmona and for a Protective Order ("Motion to Quash") to the U.S. District Court for the Southern District of New York ("Motion to Transfer"). [ECF Nos. 1; 14]. United States District Judge Jose E. Martinez referred to the Undersigned all matters relating to Pescarmona's Motion to Quash. [ECF No. 8]. The Undersigned has reviewed the Motion to Transfer, Motion to Quash, IDB's response and cross-motion to compel, and all additional evidence submitted by Pescarmona and IDB in opposition or

in support of the Motion to Transfer. [ECF Nos. 1; 6; 10; 26; 27]. In addition, the Undersigned held a hearing to address issues related to the Motion to Transfer. [ECF No. 24].

For the reasons that follow, the Undersigned **DENIES** the Motion to Transfer based on the absence of exceptional circumstances. The Undersigned will be issuing a separate order on the underlying petition to quash the subpoena.

## I.   BACKGROUND

Pescarmona filed his Motion to Quash and supporting memorandum [ECF Nos. 1; 6] seeking to quash a subpoena and for a protective order concerning discovery sought in connection with post-judgment collection proceedings arising from a judgment in another district. IDB opposes the motion and filed its Cross-Motion to Compel against Pescarmona. [ECF No. 10]. Further, IDB filed its Motion to Transfer, seeking to transfer this discovery dispute to the Southern District of New York, where the judgment for which IDB seeks discovery was entered. [ECF No. 14]. Pescarmona opposes IDB's motions. [ECF Nos. 21; 23].

The underlying litigation was filed in the Southern District of New York, captioned *Inter-American Development Bank v. Venti S.A., et al*, No. 1:15-cv-04063-PAE (S.D.N.Y.), before United States District Judge Paul A. Engelmayer.[1] The case is now in a post-judgment posture. IDB sued Venti S.A. ("Venti") and Industrias Metalurgicas

---

[1]   The underlying proceedings and court will be referred to herein as "the SDNY" or "SDNY," and Judge Engelmayer will be referred to as "the SDNY Judge."

Pescarmona S.A.I.C. Y.F. ("IMPSA") in a two-count complaint for alleged breaches of loan guarantees. The guarantees secured a loan issued by IDB to a Brazilian company affiliated with IMPSA and Venti for the pursuit of wind-energy projects in South America. IDB secured an unopposed summary judgment and subsequent entry of a final judgment in the amount of $168,172,809.92 against Venti and IMPSA for the alleged breaches of the guarantees.

As part of its post-judgment efforts, IDB served a subpoena upon Pescarmona, who is a former director of one of the judgment debtors, and a former officer of the other. Pescarmona filed the Motion to Quash here in the Southern District of Florida pursuant to Rule 45 and objected to the subpoena. Here, the discovery dispute is over whether Pescarmona must attend a deposition and whether he must produce certain documents.

IDB now submits that, pursuant to Rule 45(f), there are "exceptional circumstances" present that warrant this Court's transfer of the discovery dispute to the SDNY. IDB argues that Pescarmona is a "control person" subject to a discovery order issued against the judgment debtors in the underlying litigation. Thus, IDB argues, that the SDNY should decide the instant dispute because it should be able to enforce and interpret its own orders. [ECF No. 14, pp. 10-12]. Additionally, IDB contends that the SDNY Judge is more familiar with the "complex" underlying litigation, which therefore means that judicial economy would be served if the discovery dispute were transferred

there. [ECF No. 14, pp. 12-13].  Lastly, IDB asserts that Pescarmona would not be burdened by the transfer because his counsel has an office in New York and IDB is willing to conduct the deposition and permit the production of documents called for in its subpoena to occur in Florida.  [ECF No. 14, p. 13].

At the hearing held on the Motion to Transfer, Pescarmona argued that he is not a party to the SDNY litigation and is not a "control person" who would be bound by a discovery order issued against the judgment debtors, Venti and IMPSA.  [ECF No. 28, pp. 16-19]. Therefore, Pescarmona submits that the dispute over the subpoena does not involve the SDNY Judge's interpretation or enforcement of the standing orders in the SDNY.  Additionally, Pescarmona argues that the SDNY Judge is in no better position to adjudicate the present discovery disputes, which he says are essentially isolated legal issues that will not result in duplicative rulings.

Pescarmona argues further that there are simply no exceptional circumstances that warrant transfer to the SDNY where none of the issues related to the present discovery dispute have been ruled upon in the underlying litigation and that his interest as an independent third-party weighs against transfer.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 45 requires that motions challenging subpoenas be filed in the district where compliance with the subpoena is required.  Fed. R. Civ. P. 45(c), (d)(2)(B)(i), and (d)(3)(A); *The Dispatch Printing Co. v. Zuckerman*, No. 16-cv-80037,

2016 WL 335753, at *2 (S.D. Fla. Jan. 28, 2016).  As is the situation here, if consent to transfer has not been provided by the person subject to the subpoena, then this Court may otherwise transfer the current discovery dispute to the issuing court if it finds "exceptional circumstances" exist.  Fed. R. Civ. P. 45(f).

Rule 45(f) does not clarify what may constitute "exceptional circumstances," but the Advisory Committee Notes to the 2013 amendments do indicate some general considerations:

> [t]he prime concern should be avoiding burdens on local nonparties subject to subpoenas, and it should not be assumed that the issuing court is in a superior position to resolve subpoena-related motions. In some circumstances, however, transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts. Transfer is appropriate **only** if such interests outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion.

Fed. R. Civ. P. 45(f) (emphasis supplied).

Focusing on the Advisory Committee Notes, courts have identified at least two situations that may present exceptional circumstances warranting transfer: "(1) when the issuing court has already ruled on issues presented by the motion, and (2) when the same discovery issues are likely to arise in many districts." *See Zuckerman*, 2016 WL 335753 at *2 (citing *Judicial Watch, Inc. v. Valle Del Sol, Inc.*, 307 F.R.D. 30, 34 (D.D.C. 2014)); *Woods ex rel. U.S. v. SouthernCare, Inc.*, 303 F.R.D. 405, 408 (N.D. Ala. 2014).  Aside from these two circumstances, a district court "'should look to a variety of factors to

5

determine if the judge from the issuing court is in a better position to rule on the motion due to her familiarity with the full scope of the issues involved as well as any implications the resolution of the motion will have on the underlying litigation.'" *Zuckerman*, 2016 WL 335753 at *2 (citing *In re UBS Fin. Servs., Inc. of P.R. Sec. Litig.*, 113 F. Supp. 3d 286, 288 (D.D.C. 2015)).

The relevant factors include "the complexity, procedural posture, duration of pendency, and the nature of the issues pending before, or already resolved by, the issuing court in the underlying litigation." *Id.* at *2 (internal citations omitted); *Miller Constr. Equip. Sales, Inc. v. Clark Equip. Co.*, No. 1:15-CV-00007-HRH, 2016 WL 447717, at *5 (S.D. Ga. Feb. 3, 2016) (internal citations omitted).

Lastly, "the **proponent** of transfer **bears the burden** of showing that such [exceptional] circumstances are present." *Miller*, 2016 WL 447717 at *4 (emphasis added) (citing Fed. R. Civ. P. 45(f), Advisory Committee Notes (2013)); *Woods*, 303 F.R.D. at 407 ("The rule text and Advisory Committee's note make clear, however, that subpoena-related motions should be heard in the court where compliance is required, unless the proponent of transfer demonstrates that exceptional circumstances exist.").

The Undersigned now evaluates whether this dispute should be transferred to the SDNY[2] and looks to the Advisory Committee Notes and available case law for guidance.[3]

III.   **DISCUSSION**

**A. Whether the issuing court has already ruled on issues presented by this discovery dispute.**

One of two specific situations which may create the exceptional circumstances justifying transfer is "when the issuing court has already ruled on issues presented by the [subpoena-related] motion." *Zuckerman*, 2016 WL 335753 at *2. IDB argues that this is a matter of the SDNY enforcing its own orders because that court has already issued an order compelling the judgment debtor defendants to produce post-judgment discovery and to designate witnesses for deposition. [ECF No. 14, pp. 10-12]. But the SDNY Court issued an order compelling the underlying defendants, Venti and IMPSA, not Pescarmona, a *non-party*. There is no mention of Pescarmona, a non-party, in the orders pointed to by IDB. As with any case, these orders are directed and binding upon

---

[2]   "'Courts are in agreement that Rule 45(f) motions to transfer fall within the gambit of non-dispositive matters properly determined by a magistrate judge.'" *Miller*, 2016 WL 447717 at *6 (quoting *Argento v. Sylvania Lighting Servs. Corp.*, No. 2:15-CV-01277-JAD-NJ, 2015 WL 4918065, at *2 (D. Nev. Aug. 18, 2015)).

[3]   The authority to transfer a subpoena-related motion to the court where the action is pending in exceptional circumstances was added to Rule 45 in 2013. At this point in time the Undersigned is aware of only three cases within the Eleventh Circuit that significantly interpret and apply the transfer provision of Rule 45: *Miller*, 2016 WL 447717, at *1; *Zuckerman*, 2016 WL 335753, at *1; and *Woods*, 303 F.R.D. at 407.

7

the *parties* to the litigation. Therefore the SDNY simply has not "already ruled on issues" raised here -- whether Pescarmona must sit for a deposition and produce documents.

But IDB argues that Pescarmona is a control person of the judgment debtors, which would bind him to the order compelling discovery from the judgment debtors.[4]

Concerning judgment debtor Venti, IDB's argument relies on a court finding of "control" based on Pescarmona's status as a director of two minority shareholders of Venti.[5] But Pescarmona's supplemental declaration specifically states that while he is a former director of Venti, he currently owns no interest in the company and currently has no role or position at the company. *See* [ECF No. 26-1, ¶ 5].

Pescarmona explains that he is a director of two companies that are shareholders of Venti, one of which owns 43.85% of Venti ("Alfos"), the other owns 14.01% of the shares of Venti ("Bidenal"). [ECF No. 26-1, ¶ 6]. In turn, Venti owns shares of IMPSA. [ECF No. 26-1, ¶ 6]. Pescarmona states that in "[his] role as a director of Alfos and Bidenal, which are each respectively minority shareholders of Venti, [he] does not exert any control nor do[es] [he] have influence on the decisions and management of Venti

---

[4] The parties have not advised this Court of any SDNY ruling about whether a non-party (let alone Pescarmona) would be bound to an order compelling the *judgment debtors* to produce discovery.

[5] Pescarmona contends that the two shareholders represent a majority interest in Venti if their interests are added together.

8

[and] [he] similarly ha[s] no control over IMPSA, an entity owned in part by Venti." [ECF No. 26-1, ¶ 6].

Pescarmona's role as a director of two minority shareholders of Venti, even assuming that they would act in unison as a controlling interest, is not at this point sufficient to alone establish his alleged control of Venti. It may, however, be sufficient to justify discovery from him on that point. For now, though, the issue is whether exceptional circumstances exist to justify a transfer to the SDNY and whether IDB has convinced me that there is sufficient evidence of control to render Pescarmona susceptible to the already-issued SDNY orders against others.

As to judgment debtor IMPSA, IDB submits that because Pescarmona allegedly controls Venti, he thereby controls IMPSA because Venti is a majority shareholder of IMPSA. As further evidence of control, IDB submitted the Declaration of David Daniels in Further Support of its Motion to Transfer [ECF No. 27-1] (the "Daniels Declaration"). In addition to discussing Pescarmona's role as a director of two of Venti's shareholders, most of the statements and supporting exhibits in the Daniels Declaration relate to Pescarmona's relationship with an affiliate of IMPSA, IMPSA International, Inc. ("IMPSA International").

The evidence submitted with the Daniels Declaration does not conclusively establish Pescarmona's control over IMPSA. Mr. Daniels points to a February 15, 2015 e-mail between executives of IMPSA International, which indicates that Pescarmona

was receiving a monthly compensation from IMPSA International and that it was paying some credit card bills for Pescarmona. *See* [ECF No. 27-1, ¶ 4]. Mr. Daniels also points to a subsequent e-mail between IMPSA International executives of August 10, 2015, which shows that Pescarmona may have been receiving monthly compensation from IMPSA International to be covered under medical insurance provided by IMPSA International. [ECF No. 27-1, ¶ 5].

Additionally, Mr. Daniels points to e-mail correspondence showing that Pescarmona has received information regarding IMPSA's efforts to sell a corporate jet. [ECF No. 27-1, ¶ 6] (referencing an "email chain that Mr. Pescarmona received concerning the search for a new broker to sell the jet because the then-current broker had been unsuccessful at selling it"). One e-mail also arguably suggests that Pescarmona learned of a potential purchaser of the jet. [ECF No. 27-1, ¶ 6]. On the other hand, Pescarmona's supplemental declaration specifically states that while he is a former officer of IMPSA, he currently owns no interest in the company, nor does he have any role or position at the company. *See* [ECF No. 26-1, ¶ 3].

Lastly, IDB notes that Pescarmona is on the Advisory Committee of IMPSA.[6] [ECF No. 14, p. 9]. Pescarmona admits that he is on the Advisory Committee of IMPSA, but that it is a "purely nominal title, [and] [he] do[es] not engage in any active role, management, or decision-making with respect to the company." [ECF No. 26-1, ¶ 4].

---

[6] IDB did not present any further evidence about the Advisory Committee's role or how Pescarmona's membership in the committee illustrates control.

10

Further, Pescarmona states that "[t]he Advisory Committee has not even held a meeting since [he] has been a member of it [and] [t]he Advisory Committee, and of course myself, exert no control or power over IMPSA's officers, directors, or shareholders." [ECF No. 26-1, ¶ 4].

IDB cites to *Orlan v. Spongetch Delivery Sys., Inc.*, No. 10-CV-4104, 2012 WL 1067975, at *11 (E.D.N.Y. Mar. 29, 2012), for the proposition that an outside director can qualify as a control person. However, that case addressed "control person liability" in a different setting -- relating to securities fraud allegations. The *Orlan* Court could not conclude that the plaintiffs failed to plead control person liability for an outside director in resolving a motion to dismiss where the allegations included claims that the outside director was a shareholder of the companies and "was far more involved with [the company] and its day-to-day management and operations than a mere outside director." *Id.* Further, the company issued the director "3,330,000 shares of common stock 'as compensation for **managing our day-to-day operations**, introducing us to business, sales, contractual and fundraising opportunities and evaluating potential acquisition candidates on our behalf . . . [and] [the director] agreed to serve as a **consultant** for [the company], in exchange for an **additional 2,000,000 shares** of [the company]'s stock." *Id.* (emphasis supplied). As such, *Orlan* is factually distinguishable from the scenario developed here concerning Pescarmona's relation to Venti as a director of two of its shareholders.

Pescarmona argues that the more-applicable precedent indicates that "director status alone is not sufficient to establish control." *E.g., Mandell v. Reeve*, No. 10 CIV. 6530 RJS, 2011 WL 4585248, at *8 (S.D.N.Y. Oct. 4, 2011) *aff'd*, 510 F. App'x 73 (2d Cir. 2013); *see also In re Sahlen & Assocs., Inc. Sec. Litig.*, 773 F. Supp. 342, 362-63 (S.D. Fla. 1991) ("In the case of outside directors, on the other hand, a plaintiff must plead the outside director's authority to control the primary violation.") (internal citation omitted). Concerning Venti, Pescarmona notes that there is not "director status," rather, there is director status of two *shareholders* of Venti.

Concerning IMPSA, the e-mail exchanges submitted by IDB do not conclusively establish that Pescarmona exerts control over IMPSA merely because he may have had a connection or compensation from an affiliate or happened to receive communications about the sale of a corporate jet by IMPSA and the affiliate. *See Davidco Inv'rs, LLC v. Anchor Glass Container Corp.*, No. 8:04CV2561T-24EAJ, 2006 WL 547989, at *28 (M.D. Fla. Mar. 6, 2006) ("A defendant is liable as a controlling person if he 'had the power to control the general affairs of the entity primarily liable at the time the entity violated the securities laws . . . [and] had the requisite power to directly or indirectly control or influence the specific corporate policy which resulted in the primary liability.'"). "Control 'means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise.'" *Id.* (citing 17 C.F.R. 230.405).

While the Undersigned concludes for present purposes that IDB has not sufficiently established that Pescarmona exerts the sort of control over the judgment debtors that subject him to *their* discovery obligations, the parties have not advised the Undersigned that the SDNY has ruled on the issue of whether Pescarmona (or a similarly situated third-party) is bound by its orders against the judgment debtor entities for the purposes of the transfer analysis.[7]

Therefore, the grounds for transfer where the issuing court has already ruled on issues presented by the subpoena-related motion are not present here. *See Gilbert v. Rare Moon Media, LLC*, No. 15-MC-217-CM, 2016 WL 141635, at *2 (D. Kan. Jan. 12, 2016) (denying request to transfer where the parties had not "alerted the court to any opinions by the issuing court regarding issues presented by this [subpoena-related] motion, nor have the parties identified instances where the same issues may arise in discovery in other districts."); *Lima LS PLC v. Nassau Reinsurance Group Holdings, L.P.*, 15 MISC. 359, 2015 WL 9450645, at *4 (S.D.N.Y. Dec. 18, 2015) (denying motion to transfer

---

[7] At the hearing on April 7, 2016, IDB suggested that the SDNY may have to rule on issues presented here in the future. However, "[t]he risk of overlapping future rulings, in the name of judicial economy or otherwise, does not constitute an exceptional circumstance." *Woods*, 303 F.R.D. at 408. The parties have not filed supplemental, post-hearing submissions advising the Undersigned of any additional rulings from the SDNY. However, the Undersigned's own review of the docket sheet in the SDNY reveals that IDB advised the Court there on July 15, 2016 that it intended to pursue claims (for fraudulent conveyances) "through the filing of a new complaint rather than by motion in this action." [SDNY Dkt, ECF Nos. 141; 149; 151]. But any developments there have not been communicated to the Undersigned, and I therefore evaluate the motion to transfer based on the existing record.

even though the issuing court "may [have] be[en] more knowledgeable regarding discovery in the underlying matter, that court ha[d] not issued any rulings on this particular issue.").

### B. Whether these discovery issues are likely to arise in many districts.

The second specific situation that may present exceptional circumstances warranting transfer is "when the same discovery issues are likely to arise in many districts." *See Zuckerman*, 2016 WL 335753 at *2. In the Motion to Transfer, IDB did not argue that this particular circumstance exists here. When questioned at the hearing held on April 7, 2016, IDB suggested that there may be a discovery dispute in another district (in Pennsylvania) involving the underlying case, but it was not clear whether that would be similar to this discovery dispute. [ECF No. 28, p. 7]. IDB also suggested that there could be similar disputes that arise in the future in a few other districts, but could not say with certainty how many districts could be implicated or what issues would arise. [ECF No. 28, pp. 7-8].

After the hearing, IDB filed a notice of update regarding its discovery in Pennsylvania, where it voluntarily withdrew from its Motion to Transfer the argument that the discovery issues before the Undersigned are likely to arise in many other districts. [ECF No. 31]. Specifically, IDB stated that "[a]lthough the requested production [in Pennsylvania] is not yet complete, the IDB does not currently anticipate motion practice in the Western District of Pennsylvania in connection with that

14

subpoena. Although related discovery disputes may still arise at a later date in the Western District of Pennsylvania or elsewhere, the IDB is not relying upon the potential for such disputes in support of its Motion to Transfer [.]" [ECF No. 31].

Given this development, IDB is not now pursuing the theory that the same discovery issues are likely to arise in many districts in any meaningful way that could support transfer here. *See Gilbert*, 2016 WL 141635, at *2 (denying request to transfer where the parties had not "alerted the court to any opinions by the issuing court regarding issues presented by this [subpoena-related] motion, nor have the parties identified instances where the same issues may arise in discovery in other districts.").

### C. The better situated court.

Aside from the two specific circumstances provided by the Advisory Committee Notes that may justify transfer, courts also consider which court is better situated to rule on the subpoena-related motion. The relevant factors courts look to in determining whether the issuing court or compliance court is in a better position to rule on the discovery dispute include "'the complexity, procedural posture, duration of pendency, and the nature of the issues pending before, or already resolved by, the issuing court in the underlying litigation.'" *Zuckerman*, 2016 WL 335753 at *2 (citing *In re UBS*, 113 F. Supp. at 288). These factors weigh against transfer of the instant dispute.

The first three factors, complexity, procedural posture, and duration of pendency, certainly do not weigh in favor of transfer. According to the PACER docket

15

for the underlying litigation, the case was initiated on May 27, 2015, when IDB filed its complaint. [SDNY Dkt, ECF No. 1]. IDB sought relief for alleged breaches of certain loan guarantees against defendants Venti and IMPSA in a two-count complaint. [SDNY Dkt, ECF No. 1]. Venti and IMPSA had allegedly failed to honor guarantees for loans issued by IDB to an affiliated Brazilian company for wind-energy projects in South America. [SDNY Dkt, ECF No. 1]. The underlying case was closed on September 16, 2015, when the clerk entered a judgment awarding IDB $168,172,809.92 against defendants Venti and IMPSA after the SDNY Judge granted IDB's unopposed motion for summary judgment. [SDNY Dkt, ECF No. 34].

From its inception to final disposition, the underlying case lasted about three and a half months. After the entry of the judgment, IDB has remained active in the underlying case in post-judgment proceedings to collect upon the judgment and to obtain post-judgment discovery in aid of execution.[8] As such, the merits of the case were litigated and resolved in about three and a half months and it is in a post-judgment posture. The underlying action to enforce loan guarantees was likely resolved without any real opposition. [9] *Cf. Zuckerman*, 2016 WL 335753 at *3 (finding that

---

[8]     Defendants have not been represented by counsel in the underlying litigation as of November 4, 2015, and appear to have taken a strategy of non-opposition to the IDB's post-judgment efforts. *See generally* SDNY Dkt; *see also* [SDNY Dkt, ECF No. 54].

[9]     The quick disposition of the underlying case is likely the result of a very limited defense, if any, presented by Defendants. As noted by the SDNY Judge in granting

exceptional circumstances justified transfer as underlying case was pending for almost ten years with one thousand and fifteen docket entries).

The last factor (regarding the "nature of the issues pending before, or already resolved by, the issuing court in the underlying litigation") does not weigh in favor of transfer either. The SDNY has not resolved any of the instant issues related to this subpoena. Not only has the SDNY not ruled on any issues raised by the subpoena related motions here, but there are no similar issues pending on the SDNY docket. There are no rulings related to the application of the order compelling production based on the "control" of the judgment debtors, the scope of non-party post-judgment discovery, or the application of the work-product privilege that is being asserted by Pescarmona here. Given that the issues before me can be independently and adequately handled here -- this factor does not weigh in favor of transfer.

Concerning independent legal issues such as the application of attorney-client or work-product privileges, courts applying Rule 45(f) have recognized that such questions are adequately dealt with by the compliance court. *See Platinum Props. Inv'r Network, Inc. v. AMCO Ins. Co.*, No. 15-MC-213-JAR-TJJ, 2015 WL 5883819, at *5 (D. Kan. Oct. 8, 2015) (denying motion to transfer despite underlying court's issuance of a motion to compel that encouraged discovery to be sought from third-parties in part

---

summary judgment for IDB, no opposition to IDB's motion for summary judgment was submitted, as Defendants chose not to oppose it. [SDNY Dkt, ECF No. 30].

because the issue in dispute was whether or not a privilege applied as "either court [was] equally qualified to assess the privilege objections raised to the subpoenas"); *Fed. Deposit Ins. Corp. v. Galan-Alvarez*, No. 1:15-MC-00752 (CRC), 2015 WL 5602342, at *3 (D.D.C. Sept. 4, 2015) (denying motion to transfer "given that the motion [to quash] present[ed] a legal question separate from the underlying litigation's merits, the issuing Court, which has not ruled on the issues presented in the motion, is in no better position than this one to decide it"); *Daggett v. Scott*, No. CV15MC00065CMAMJW, 2015 WL 3407314, at *4 (D. Colo. May 26, 2015) (denying motion to transfer even where the underlying court issued at least two rulings on whether third-party's report was privileged "but that question ha[d] little (if anything) to do with whether [the third-party] is an expert witness or a lay witness"); *Ford Glob. Techs., LLC v. New World Intern., Inc.*, No. C15-1329JLR, 2015 WL 6507151, at *3 (W.D. Wash. Oct. 27, 2015) (denying motion to transfer despite the fact that the parties were awaiting a ruling on the scope of discovery from the underlying court and where that issue did not need to be ruled upon in order to dispose of the present discovery dispute).

Some courts have also found that it is important to "'balance the interest of local resolution against factors such as judicial economy and risk of inconsistent rulings.'" *Miller*, 2016 WL 447717, at *5 (internal citations omitted); *but see Woods*, 303 F.R.D. at 408-09 ("If judicial efficiency is the primary concern, transfer would almost always be

appropriate in order to avoid multiple rulings on the same issues. The Committee notes, however, do not cite judicial efficiency as a basis for transfer.").

The reasoning in *Woods* is persuasive. If courts are to consider judicial economy, then they would almost *always* weigh in favor of transfer. Without deciding whether judicial economy should or should not be considered, I note that this factor does not weigh in favor of transfer here because the SDNY has not ruled on the issues presented here, nor does it appear postured to do so. For example, in *Zuckerman*, transfer was appropriate based in part on judicial economy and efficiency concerns where the motion to quash and motion to compel at issue had "already been fully briefed" in the issuing court. *Zuckerman*, 2016 WL 335753 at *3. These types of circumstances are not present here.

Although the burden on Pescarmona presented by a transfer is arguably manageable, "[t]he prime concern should be avoiding burdens on local nonparties subject to subpoenas, and it should not be assumed that the issuing court is in a superior position to resolve subpoena-related motions." Fed. R. Civ. P. 45, Advisory Committee Notes (2013). Under the present facts, the Court does not find that exceptional circumstances exist to support transfer of the instant dispute.

## IV. CONCLUSION

For the foregoing reasons, the Undersigned denies IDB's Motion to Transfer [ECF No. 14].

**DONE AND ORDERED**, in Chambers, in Miami, Florida, on October 4, 2016.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
All counsel of record